**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**CHRISTOPHER LANCASTER,**
       **Plaintiff,**

**v.**                                    **CIVIL ACTION NO. 3:16-CV-30
(GROH)**

**UNITED STATES OF AMERICA,**
         **Defendant.**

**REPORT AND RECOMMENDATION
TO GRANT MOTION TO DISMISS**

## I.    PROCEDURAL HISTORY

On March 22, 2016, the Plaintiff initiated this action by filing a civil rights complaint which alleges that he was assaulted by employees at United States Penitentiary Hazelton on June 5, 2014.  ECF No. 1.  On that same date a Notice of Deficient Pleading was issued and the Plaintiff was directed to file the required court-approved forms.  ECF No. 2.  On April 1, 2016, Plaintiff filed a Motion for Extension of Time to File which was denied on April 5, 2016.  ECF Nos. 5, 6.  An Order to Show Cause was issued on May 16, 2016, and received by Plaintiff on May 19, 2016.  ECF Nos. 12, 13.

On June 6, 2016, Plaintiff filed his Response to Order to Show Cause alleging that the court-approved forms which he received from the Court had been misplaced by officials in the Special Housing Unit at USP Victorville where he was then incarcerated.  ECF No. 14.  On June 20, 2016, Plaintiff filed the court-approved complaint forms for his Federal Tort Claim Act claim, along with his Motion for Leave to Proceed *in forma*

*pauperis*, Consent to Collection of Fees from Trust Account and Prisoner Trust Account Statement.  ECF Nos. 16 – 19.   In Section VI, "Statement of Claim," Plaintiff asserted that on June 5, 2014, he suffered the following injuries by agents of the Government: four chipped teeth; head injuries including a laceration to his forehead and concussion which caused him to be knocked unconscious; and injury to his lower back.  ECF No. 16 at 6.   In Section VII, "Injury," Plaintiff further explained that his injuries had caused "severe headaches, blur[r]ing vision, dizz[i]ness for over 48 months."  ECF No. 16 at 9. On July 5, 2016, the Court granted Plaintiff's motion to proceed *in forma pauperis* and without pre-payment of fees.  ECF No. 21.

On August 23, 2016, the Court ordered the Plaintiff to file a copy of his administrative tort claim with the court.  ECF No. 23.   Plaintiff responded on September 9, 2016, with an explanation that he was unable to properly comply because when he was transferred from USP Victorville to USP Florence High that some of his property was misplaced, including his court documents.  ECF No. 25.  On October 11, 2016, Plaintiff filed with the Court a copy of a letter from Bureau of Prisons regional counsel which advised Plaintiff of the denial of his Administrative Claim Number TRT-MXR-2014-04614[1], which claim sought $8,300,000.00 compensation for his alleged personal injuries. ECF No. 26.

On October 12, 2016, the Government was ordered to answer Plaintiff's complaint.  ECF No. 27.  On December 6, 2016, the Government filed a motion to enlarge the time to answer.  ECF No. 32.  The Court granted the requested extension, but required the Government to answer by January 6, 2017.  ECF No. 33.

---

[1]  Plaintiff filed this tort claim on or about June 9, 2014.  ECF No. 50-1 at 7.

On January 5, 2017, the Government filed a Motion to Dismiss or, in the Alternative, for Summary Judgment with exhibits and a Memorandum in support thereof. ECF Nos. 35 – 36. The Court issued a Roseboro Notice on January 9, 2017.  ECF No. 37.  On February 21, 2017, the Government supplemented its Motion to Dismiss with a missing attachment.  ECF Nos. 50.

On February 6, 2017, by separate written motions, Plaintiff sought an extension of time to file a response to the Government's Motion to Dismiss and discovery.  ECF Nos. 47, 48.  By Order entered February 22, 2017, Plaintiff was granted until April 3, 2017 to respond.  ECF No. 51.  Plaintiff's motion for discovery was denied by order entered March 8, 2017.  ECF No. 58.

Prior to the denial of his discovery motion, on February 28, 2017, Plaintiff filed two[2] motions, both styled as injunctions, one seeking medical assessment by an outside specialist, and the second seeking permission to contact witnesses in separate federal prisons.  ECF Nos. 53, 55.  Those motions were both filed on the ground that the information sought was needed to respond to the Government's Motion to Dismiss.

On April 3, 2017, Plaintiff sought a second extension of time to respond to the Government's Motion to Dismiss.  ECF No. 60.  By Order entered on April 5, 2017, Plaintiff was granted until May 3, 2017 to respond, and advised that no further extensions would be granted.  ECF No. 61.

On April 6, 2017, Plaintiff appealed to the District Court regarding the denial of his Motion for Discovery.  ECF No. 65.  On April 28, 2017, the District Court denied the Plaintiff interim review.  ECF No. 67.

---

[2]  On February 28, 2017, Plaintiff also filed a third motion which sought appointment of counsel which motion was denied by order entered March 8, 2017.  ECF Nos. 54, 57.

On May 12, 2017, Plaintiff's response to the Government's motion to dismiss or summary judgment was filed.  ECF No. 71.  Plaintiff's response was signed April 24, 2017, and was postmarked May 9, 2017.  ECF Nos. 71 at 6, 71-21.  The response consisted of four pages of dental records (ECF Nos. 71-6, 71-7, 71-8), four pages of not previously submitted medical records (ECF Nos. 71-18, 71-19), and two pages of previously submitted medical records (ECF No. 71-20 at 1 – 2), and sixty-six pages of documents handwritten by Plaintiff, which purport to be a history of his requests for medical treatment and symptoms.

## II.    FACTUAL HISTORY

In his complaint, under the section entitled, "VI. STATEMENT OF CLAIM," Plaintiff claims that on June 5, 2014, while he was being escorted to his cell with his hands cuffed behind him, he was "paused" in front of his cell door, at which time his head was smashed against the wall resulting in four of his teeth being chipped.  ECF No. 16 at 6.  Plaintiff claims that due to the impact, one of his chipped teeth later fell out. Id.  Plaintiff also claims that his forehead was split open by the impact, causing him to lose consciousness, after which time officers "tossed" him into his cell, injuring his lower back.  Id.

In the same complaint under the section entitled, "VII. INJURY," Plaintiff claims that his right eye, not his forehead, was split open, and that after he was knocked unconscious, officers "slammed" him onto the concrete floor, injuring his lower back. ECF No. 16 at 9.  Although Plaintiff also claims in that section that the impact "has caused . . . severe headaches, blurring vision, [and] dizz[i]ness for over 48 months," the

4

incident giving rise to his alleged injuries occurred only 24 months before he filed his claim.  Id.

The claims asserted by Plaintiff in his complaint also differ from the claims he asserted in the tort claim he filed with the Bureau of Prisons.  ECF No. 50-1.    That claim, 2014-04614, was investigated by USP Hazelton Lieutenant Steve Trent whose Declaration was attached as an exhibit to the Government's Motion to Dismiss.  ECF No. 36-1.  Lt. Trent declared that he found no staff misconduct or omissions resulting in negligence or cruel and unusual punishment.  Id. at 3.  Lt. Trent's declaration also quotes Bureau of Prisons Use of Force Program Statement 5566.06, Use of Force and Application of Restraints, which permits staff to use only the amount of force necessary to gain control of an inmate, to ensure the safety of inmates, staff and others, and to prevent property damage and ensure institution security and good order.  Id.  According to that policy, "immediate or unplanned use of force by staff is required when an inmate is trying to self-inflict injuries which may be life threatening or is assaulting any other person to include other inmates."  Id.  Lt. Trent's recommendation regarding Plaintiff's tort claim was reviewed by USP Hazelton Tort Claim Coordinator Rachel Thompson, and adopted by the complex warden, Terry O'Brien on May 5, 2015.  ECF No. 50-1 at 2.

The Government submitted surveillance video of the incident to the undersigned as an exhibit to its pleadings for an in camera review.  ECF No. 50.  Therein Plaintiff and his cell mate are shown being escorted to their cells.  As the figures enter the empty corridor view, Plaintiff's cellmate appears first, escorted by a single Correctional Officer ("CO").  ECF No. 50 at 19:36:03.  The cell mate looks over his left shoulder behind him, and at 19:36:10, Plaintiff is placed against a wall to the right rear of the

frame.  At 19:36:57, Plaintiff is again placed against the same wall in the right rear of the frame.  At 19:37:02, Plaintiff is escorted down the corridor to his cell by two COs.  Two additional COs follow the COs escorting Plaintiff.  Id.  At 19:37:28, as Plaintiff turns to his right to enter his cell, he jerks his body while the two COs are still escorting him. The CO who previously escorted Plaintiff's cell mate, and who appears in the lower left of the frame, assists the two COs escorting Plaintiff to place him against the wall outside his cell door at 19:37:32.   This is the location where Plaintiff claims to have been injured. ECF No. 16 at 6.

At this time, both the fourth and fifth COs walking behind Plaintiff and his escorts move behind the three COs securing Plaintiff against the wall.  ECF No. 50 at 19:37:34-38.  Other than their presence, these two COs do not engage with Plaintiff.  At 19:37:47, Plaintiff's head moves away from the wall at which time one of the three COs securing him with his right hand on Plaintiff's hair, forces Plaintiff's head back against the wall. Throughout the use of force, at least two of the three COs securing him can be seen to speak to Plaintiff.  Id.

At 19:38:24, the three COs who secured Plaintiff to the wall are clearly shown releasing him, at which time he walks, unaided, into his cell.  Id.  At 19:38:28, three of the five COs raise their rights hands to signal to a sixth CO at the far end of the corridor. Id. The use of force where Plaintiff claims he was injured lasts for less than one minute. By 19:39:08, the five COs begin to walk down the corridor away from Plaintiff's cell. None of the COs enter Plaintiff's cell.  Id.

Correctional Officer Derek Artrip's Declaration submitted by the Government states, that on June 5, 2014:

at approximately 7:50 pm., Plaintiff was being escorted from the holding cell to his assigned cell [ ] when he began to actively resist the transport.  This prompted him to be placed against the wall.   At this time, I assisted the officer with escorting him the rest of the way to his cell.   When we approached the cell door, Plaintiff made an attempt to kick another officer escorting his cellmate, and was placed against the wall again to prevent him from harming himself or staff members.  He was placed against the wall until he regained control of himself.  While resisting, he hit his head on the side of the cell door resulting in a small abrasion over his right eye.  After he calmed down, he was placed into a cell without further incident.

ECF No. 36-2 at 2.  CO Artrip denied throwing Plaintiff into his cell, which assertion is consistent with the video surveillance.  ECF Nos. 36-2 at 3, 50.

On June 5, 2014 at 8:19 p.m., approximately 40 minutes after the use of force, Plaintiff was assessed by USP Hazelton medical staff Gary Hileman, RN.  ECF No. 36-1 at 9.   In his Declaration, which was submitted by the Government in support of its Motion to Dismiss, Mr. Hileman stated that, "Plaintiff reported that he had a cut on his right eyebrow, and a chipped tooth. . . I documented no signs of severe pain or distress. The only injury I noted was a small superficial laceration to the right side of his head," and "no stitches or sutures [were] applied to the wound."   ECF No. 36-3 at 2. Additionally, Bureau of Prisons Health Services Clinical Encounter records prepared by Mr. Hileman reflect that Plaintiff, "states cut on right brow, also chip[ped] tooth." However, in his assessment Mr. Hileman noted that "Inmate was placed against wall, resulting in small laceration to right eye brow bleeding controlled.   Wound will be cleaned and assess[ed].  No other injuries noted."  ECF No. 50-1 at 4.  Plaintiff did not report any other injuries to Mr. Hileman on the date the injuries were alleged to have occurred.  Neither the later claim of "four chipped teeth," nor the claim that Plaintiff was

tossed or thrown into his cell causing injury to his back, were reported at the time of Mr. Hileman's medical assessment.  Id.

Plaintiff's Tort Claim Form 95 which he filed with the BOP regarding this event was, according to Plaintiff's signature and date on that document, prepared on June 5, 2014, the same date that the incident occurred.  ECF No. 50-1 at 7.  In Form 95 Plaintiff claims that he "was denied adequate medical attention from 7:55 p.m. until 12 a.m."  Id. at 4.  However, USP Hazelton health records contradict that claim.  ECF No. 36-1 at 9 - 10.  Plaintiff further attached to his Form 95 a three and a half page handwritten narrative (ECF No. 50-1 at 8 – 11) describing how he received his alleged injuries in which he claimed that guards "chipped 2 of my front teeth," and split his right eye open "causing blood to gush from the wound."  ECF No. 50-1 at 9.  Plaintiff claims, "at this time my knees buckled [and] I passed out.  I was then shoved inside [my] cell [where] I landed on the floor."  Id.  Petitioner's claim that he passed out is inconsistent with the video surveillance footage which shows him walking unaided into his cell.  ECF No. 50 at 19:38:24.  Plaintiff further claimed in Form 95 that he was lying on the floor of his cell "semi-conscious" which allegedly occurred after he was thrown on the floor.  Such claims are unsupported by the video which shows Plaintiff walking into his cell unaided.

Those claims are also inconsistent with the medical records submitted by Plaintiff with his response to the Government's motion to dismiss.  Plaintiff's medical records from June 6, 2014 were prepared by Certified Physician Assistant Christopher Meyer who saw Plaintiff at 9:58 a.m. that day.  ECF No. 71-19.  At that time Plaintiff complained of contusion to his right eye, with "sore and blurry vision".  Id.  PA-C Meyer found that Plaintiff "[a]ppears [w]ell, [a]lert and [o]riented" to person, time and place.  Id.

Further, PA-C Meyer did not find Plaintiff to be acutely ill, and documented that Plaintiff had a one centimeter "superficial abrasion" and two centimeter hematoma on his right brow.  Id.  PA-C Meyer also observed that Plaintiff exhibited a normal gait.  Id. at 2. Finally, no dental injury or mouth injury was documented by PA-C Meyer[3].

## III.   STANDARD OF REVIEW

### A.   Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted.  The Federal Rules of Civil Procedure require only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99 (1957)). Courts long have cited "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Plaintiff is proceeding pro se and therefore the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1, 92 S.Ct. 594, 596 (1972) (per curiam); Erickson v.

---

[3] Plaintiff submitted four dental records to document his alleged dental and mouth injuries.  One, a "Clinical Dental Record" signed by J. Coradini, DDS, FCC Coleman, on May 10, 2013, a year before the use of force, evaluated Plaintiff's oral hygiene as "Poor."  ECF No. 71-7.  That record does not further describe the condition of Plaintiff's teeth, including whether any teeth were chipped at that time.  Id. Additional dental records dated June 12, 2014, and April 15, 2015, document that Plaintiff had chipped teeth and required a root canal, however, none of the submitted records definitively establish a causal link between those conditions and the June 5, 2014 use of force.  ECF Nos. 71-6, 71-8.

Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Haines, supra, at 520–21. "[T]he mandated liberal construction afforded to pro se pleadings 'means that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so.'" Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir.1999). However, "judges are [ ] not required to construct a party's legal arguments for him." Small v. Endicott, 998 F.2d 411, 417 - 8 (7th Cir.1993).

Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570. In Twombly, the Supreme Court found that "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true

10

a legal conclusion couched as a factual allegation.  Id. at 678.  "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 679. Thus, a well-pleaded complaint  must offer more than "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim.  Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly,  it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses."  Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff.  Mylan Labs, Inc. v. Matkari, 7 F.3d1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

"Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment."  Alternative Energy. Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir.2001) (cited with approval in Witthohn v. Federal Ins. Co., 164 Fed. Appx. 395 (4th Cir.2006) (unpublished)).  There are, however, exceptions to the rule that a court may not consider any documents outside of the complaint.  "Courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss,

in particular documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S.Ct. 2499, 2509 (2007).

**B.      Motion for Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56(a), the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In applying the standard for summary judgment, the Court must review all the evidence in the light most favorable to the nonmoving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion to, "demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348 (1986).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that

would support a verdict." Anderson, supra, at 256. Thus, the nonmoving party must present specific facts showing the existence of a genuine issue for trial, meaning that "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248.

To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, supra, at 248.

Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, supra, at 587. "Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. citing First Ntl. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 155, 1592 (1968). See Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). Although any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, where, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Matsushita, supra, at 587-88. Anderson, supra, at 248-49.

13

## IV.    ANALYSIS

### A. Jurisdiction and Applicability of the Federal Tort Claim Act

The United States enjoys sovereign immunity except to the extent that Congress has waived such immunity by enacting the Federal Tort Claims Act, 28 U.S.C. §§ 2671, *et seq.* The FTCA provides in § 2674 that:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

Jurisdiction for violations of the FTCA is governed by 28 U.S.C. § 1346 which provides in subparagraphs (b)(1) and (b)(2):

> (b)(1) [T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.
> (2) No person convicted of a felony who is incarcerated while awaiting sentencing or while serving a sentence may bring a civil action against the United States or any agency, officer, or employee of the Government for mental or emotional injury suffered while in custody without a prior showing of a physical injury.

The FTCA waives the Government's traditional immunity from suit for claims based on the negligence of its employees.  The Act also "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred."  Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). The Government cannot be sued, however, unless Congress has waived the

Government's sovereign immunity and authorized suit under the FTCA.   Dalehite v. United States, 346 U.S. 15, 30-31 (1953).

However, the waiver of the federal government's sovereign immunity through the FTCA with respect to negligence claims is not absolute. Congress specified a number of exceptions limiting the waiver in 28 U.S.C. § 2680, including the discretionary function exception and the intentional tort exception.

If any exception set forth in 28 U.S.C. § 2680 applies in an action, the United States retains sovereign immunity, and the District Court has no subject matter jurisdiction.   Cohen v. United States, 151 F.3d 1338, 1340 (11th Cir.1998).  If either the discretionary function or intentional tort exception applies, the waiver of sovereign immunity is limited and the federal court will lack jurisdiction to hear the case.   Williams v. United States, 50 F.3d 299, 304-5 (4th Cir. 1995); Jackson v. United States, 77 F.Supp.2d 709, 713 (D.Md. 1999).

## 1.  The Discretionary Function Exception to FTCA Liability

The discretionary function exception is codified in subsection (a) of the statute:

> The provisions of this chapter and section 1346(b) of this title shall not apply to—(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680.

A District Court considering whether the discretionary function exception bars an FTCA claim must determine whether: (1) the action taken involves choice by the acting

15

government employee or a specific course was mandated by statute, regulation or policy; and (2) the choice is "of the kind that the discretionary function was designed to shield." Berkovitz by Berkovitz v. United States, 486 U.S. 531, 536, 108 S.Ct. 1954, 1959 (1988). "When established governmental policy . . . allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." United States v. Gaubert, 499 U.S. 315, 324, 111 S.Ct. 1267, 1274 (1991).

Because "the United States retains its immunity for torts involving a 'discretionary function or duty' of the Government, regardless of whether or not the discretion was abused," Plaintiff cannot obtain relief for any tort alleged to have been committed by an agent who was performing such a discretionary function. Jackson, supra, at 713. Thus, Plaintiff must establish that the Government's agents were not performing a discretionary function at the time he alleges he was injured, and that the Government was not exempt from the FTCA pursuant to subsection (a).

### 2.  The Intentional Tort Exception to FTCA Liability

The intentional tort exception is codified in subsection (h) of the statute:

> The provisions of this chapter and section 1346(b) of this title shall not apply to—(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided,* That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For purposes of this subsection, 'investigative or law enforcement officers' means any officer

16

of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

28 U.S.C. § 2680.

Under the FTCA's intentional tort exception, the United States is not liable for the intentional torts of its employees unless those acts are committed by law enforcement officers of the United States. Correctional officers are considered "law enforcement officers" pursuant to 28 U.S.C. § 2680(h).  See Ortiz v. Pearson, 88 F.Supp.2d 151, 164 (S.D.N.Y.2000). Accordingly, the FTCA waives sovereign immunity respecting alleged intentional torts committed by correctional officers; however, if "the actions underlying intentional tort allegations described in § 2680(h), [are] authorized and implemented consistent with federal law and the Constitution of the United States, [such actions] may be considered discretionary functions under § 2680(a), even if they would otherwise constitute actionable torts under state law." Medina v. United States, 259 F.3d 220, 225 (4th Cir. 2001), citing Jackson v. United States, 77 F.Supp.2d 709, 714 (D.Md. 1999) ("The Court holds that a FTCA plaintiff must first overcome the discretionary function 'hurdle' before the Court will consider intentional tort claims under § 2680(h)."). Moreover, "[i]f a defendant can show that the tortious conduct involves a 'discretionary function,' a plaintiff cannot maintain an FTCA claim, even if the discretionary act constitutes an intentional tort under § 2680(h)." Gasho v. United States, 39 F.3d 1420, 1435 (9th Cir. 1994).

Thus, a District Court considering whether the intentional tort exception bars an FTCA claim must determine if the Government's employees, in this case the correctional officers whom Plaintiff claims injured him, were performing a discretionary

17

function at the time the alleged injuries occurred.  If the Court determines that to be the case, the Government and its employees are immune from liability pursuant to the holdings in <u>Medina</u>, <u>Jackson</u> and <u>Gasho</u>.

**B. This Court is Without Subject Matter Jurisdiction Because Government Agents Performed a Discretionary Function as Contemplated by the FTCA**

The BOP has a discretionary duty of care to maintain order within its facilities pursuant to <u>18 U.S.C. § 4042</u> , which provides, in pertinent part, that, "[t]he Bureau of Prisons under the direction of the Attorney General, shall ... provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States."  Courts of Appeal have interpreted this statute as granting the BOP discretion in its implementation. "While it is true that this statute sets forth a mandatory duty of care, it does not, however, direct the manner by which the BOP must fulfill this duty. The statute sets forth no particular conduct the BOP personnel should engage in or avoid while attempting to fulfill their duty to protect inmates."  <u>Calderon v. United States</u>, 123 F.3d 947 (7th Cir. 1997).  <u>See</u> <u>Carter v. United States</u>, 2002 WL 32332081, *5 (D.S.C.), 57 Fed.Appx. 208 (4th Cir. Mar.14, 2003)(citations omitted).

The COs escorting Plaintiff to his cell when he alleges he was injured were performing a discretionary function when they exercised force to gain control of Plaintiff. Federal Bureau of Prisons Program Statement Number 5566.06 § 552.21.a. provides that, "[s]taff may immediately use force and/or apply restraints when the behavior described in § 552.20 constitutes an immediate, serious threat to the inmate, staff, others, property, or to institution security and good order."  The provision referenced

18

therein, § 552.20, provides in part that, "Staff are authorized to apply physical restraints necessary to gain control of an inmate who appears to be dangerous because the inmate: a. Assaults another individual. . . or e. Becomes violent or displays signs of imminent violence."

These program statements contain language which clearly indicates that discretion should be used in implementing the statements. The word "may" is used in § 552.21, connoting that staff have a choice whether to use force or not. Further, the conjunctive phrase "and/or" in § 552.21.a indicates that staff have a clear choice whether or not to use restraints during the application of force, denoting discretion to be exercised. Additionally, § 552.20 "authorizes" staff to apply restraint, again indicating that staff must employ discretion when determining a course of action.

CO Artrip declared that Plaintiff had been resisting transport to his cell and "[w]hen we approached the cell door, Plaintiff made an attempt to kick another officer," which action prompted the immediate use of force. This account of the events that occurred on June 5, 2014, is fully confirmed by the objective video which the undersigned reviewed in camera. Under either § 552.20.a. or § 552.20.e., the COs were authorized to apply physical restraint necessary to gain control of Plaintiff because his attempt to kick an officer constituted both an assault on another individual and violence by the Plaintiff. Pursuant to § 552.21a., the Government's COs were authorized to use such force immediately, and the decision to apply immediate force was clearly a proper discretionary function for those COs.

The undersigned finds that the statute and applicable BOP Program Statement on Use of Force, P5566.06, clearly contemplate the exercise of considerable discretion

by BOP staff while fulfilling their duties.  Moreover, the decision to use immediate force against Plaintiff on June 5, 2014, was an appropriate discretionary function based on Plaintiff's attempt to assault a correctional officer and signs of imminent violence.  Thus, the undersigned finds the Government's agents properly performed their discretionary function and complied with Program Statement P5566.06. § 552.20 during the immediate use of force during which Plaintiff claims he was injured.

Although Plaintiff responded to the Government's Motion to Dismiss, he failed to establish that the Government's application of force, which may have resulted in injury to him, was anything but discretionary.  Instead Plaintiff's response focused on his alleged injuries and his reported symptoms.[4]  Because the plaintiff cannot overcome the discretionary function hurdle, it is unnecessary to consider whether the intentional tort exception applies.  Moreover, based on the applicability of the discretionary function exception to the FTCA, it is also unnecessary to analyze the applicability of state tort law exceptions argued by the Government.

However, even were this Court to perform an analysis under the intentional tort exception, the Plaintiff's suit is without legal merit.  The individuals identified by Plaintiff as the Government agents who injured him are correctional officers, and as such they are subject to both the same liability and immunity which applies law enforcement officers.  Because the alleged intentional torts of those agents were implemented consistent with federal law and the Constitution, those actions may properly be

---

[4] In his response Plaintiff claims that he suffered additional injuries which were not documented by any medical provider at the time of the alleged injury.  Those additional injuries or symptoms include: need for a back brace (ECF No. 71-10 at 3); difficulty bending or squatting (ECF No. 71-10 at 5, 7, 8, 11, 13- 19); anal bleeding (ECF No. 71-10 at 5, 7 – 10, 12 – 14, 16 – 19); need for a cane (ECF No. 71-10 at 8); right leg numbness (ECF No. 71-10 at 10); and inability to fully straighten his right leg (ECF No. 71-10 at 12, 13, 15 – 19).

considered discretionary functions.  Accordingly, the undersigned finds that even if the actions of BOP correctional officers were considered intentional torts, because those actions were lawfully performed consistent with federal law, the actions were discretionary functions, and the Government is thus immune from suit under the FTCA.

It is further unnecessary to consider Plaintiff's allegations of injuries to his teeth, vision and back.  Notwithstanding that finding, as to Plaintiff's assertion that the Hazelton staff "tossed," "slammed" or "threw" him into his cell, causing injury to his back, the undersigned finds that there is no objective support in the record for the plaintiff's assertions.  In various documents Plaintiff makes different claims as to his alleged back injuries: (1) on June 5 and 6, 2014, he failed to report any back injury to the RN and PA-C who examined him [ECF Nos. 50-1 at 4, 71-19 at 1 - 3]; (2) in his BOP tort claim filed June 9, 2014 he reported lumbar numbness [ECF No. 50-1 at 10]; and (3) in his June 20, 2016 complaint filed in this case he claimed lower back injury that has caused him "constant pain" [ECF No. 16 at 9].  The video clearly reflects that BOP staff did not slam, throw, or toss plaintiff into his cell, but instead shows Plaintiff walking unaided into his cell with the five COs present watching him.  ECF No. 50.  Further, Plaintiff did not report that he suffered any back injury to either the RN who examined him on June 5, 2014, or the PA-C who examined him on June 6, 2014.  Most importantly and inexplicably, Plaintiff claims that the back and head injuries he suffered in 2014, two years before filing his Complaint in 2016, have caused him to suffer for four years, a period of time which has not yet fully elapsed.

For all of these reasons, the undersigned finds that the District Court lacks subject matter jurisdiction and that this matter should be dismissed.

## V.    RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Defendant's Motion to Dismiss (ECF No. 35) be **GRANTED** and that Plaintiff's motions for outside medical assessment and to contact prisoners in other facilities (ECF Nos. 53 and 55) be **DENIED**.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.  A copy of such objections should also be submitted to the Honorable Gina M. Groh, Chief United States District Judge.  Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.  28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985); Wells v. Shriners Hosp., 109 F.3d 198 (4th Cir 1997).

The Clerk of the Court is directed to send a copy of this Order to the Plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet and to counsel of record via electronic means.

DATED: May 18, 2017

/s/ *Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE